UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DAVID CONERLY,

         Plaintiff,

    v.

CHRISTOPHER FLORES, et al.,

         Defendants.

Case No.  4:15-cv-04069-KAW

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. No. 29

On September 7, 2015, Plaintiff David Conerly filed this action against Defendant Berkeley Police Officers Christopher Flores and Jeremy Lathrop for unlawful arrest and excessive force.  Before the Court is Defendants' motion for summary judgment.

On November 17, 2016, the Court held a hearing, and, after careful consideration of the parties' arguments and moving papers, and for the reasons set forth below, the Court GRANTS IN PART AND DENIES IN PART Defendants' Motion for Summary Judgment.

## I.    BACKGROUND

The facts are largely undisputed. On February 22, 2013, Defendants Officer Lathrop and Officer Flores were patrolling an area near San Pablo Park in Berkeley, California in a semi-marked, police vehicle. (Compl. ¶ 8; *see also* Flores Decl. ¶ 2; Lathrop Decl. ¶ 2.) "When the plaintiff saw the police vehicle, he immediately fled into the block behind 2627 Park Street in Berkeley, California." (Compl. ¶ 9; *see also* Flores Decl. ¶ 3; Lathrop Decl. ¶ 3.)  "Officer Flores … exited the vehicle and said "stop Police." (Compl. ¶ 9; *see also* Flores Decl. ¶ 4; Lathrop Decl. ¶ 4.)  "The plaintiff did not comply and continued to flee." (Compl. ¶ 9; *see also* Flores Decl. ¶ 4; Lathrop Decl. ¶ 4.)  A few minutes later, an "anonymous citizen told the defendants that they had seen the plaintiff heading toward 2748 Acton Street in Berkeley; a residential home that the citizen

had earlier observed the plaintiff hanging out in front of." (Compl. ¶ 11; *see also* Flores Decl. ¶ 7; Lathrop Decl. ¶ 7.)  The backyard of 2767 Park Street, where plaintiff fled, is adjacent to a backyard on Acton Street; 2748 Acton is a few houses north of 2767 Park Street, but on the same block. (Flores Decl. ¶ 7; Lathrop Decl. ¶ 7.)

"Upon receiving this information, the defendants went to 2748 Acton Street." (Compl. ¶ 12; *see also* Flores Decl. ¶ 8; Lathrop Decl. ¶ 8.) "Upon their arrival, the defendants observed an individual who appeared to be sweating and nervous leave the house." (Compl. ¶ 12.)  "The defendants … ascertained that an individual named Robert Custer resided at the 2748 Acton address who was on probation with an active search clause and was registered as living at this address." (Compl. ¶ 12; *see also* Flores Decl. ¶ 9; Lathrop Decl. ¶ 9.)  Due to the "active probation search condition (which was for a felony firearm crime), the defendants entered the home." (Compl. ¶ 13; *see also* Flores Decl. ¶ 10; Lathrop Decl. ¶ 10.)  The officers entered the home with their handguns drawn. (Compl. ¶ 13; Flores Decl. ¶ 11; Lathrop Decl. ¶ 11.) "Once the defendants gained entry, they saw Plaintiff exit the northwest bedroom and after immediately recognizing the plaintiff as the person who had fled from them earlier, … ordered the plaintiff to put his hands on his head." (Compl. ¶ 14; *see also* Flores Decl. ¶ 12; Lathrop Decl. ¶ 12.)

The officers handcuffed Plaintiff.  Plaintiff claims that Defendants "pointed weapons at the plaintiff and slammed him onto the ground, causing him to suffer severe injuries to his arms, neck and shoulders as well as severe emotional distress." (Compl. ¶ 27.)  Defendants contend that they handcuffed Plaintiff solely for officer safety reasons and did not use any force to do so. (Flores Decl. ¶¶ 14-15, 27; Lathrop Decl. ¶¶ 13-14, 25.)  Plaintiff contends that he was arrested when he was handcuffed.  The officers contend that they identified Plaintiff, and ascertained through a law enforcement database that he was on parole for a violation of Health and Safety Code § 11351.5 (possession of crack cocaine for sale). (Flores Decl. ¶ 16; Lathrop Decl. ¶ 15.)  Pursuant to Plaintiff's parole search clause, Officer Flores searched him and found $1,003 in cash in his pockets and a small amount of marijuana. (Flores Decl. ¶ 17; Lathrop Decl. ¶ 16, Ex. A.)  Defendants contend that Plaintiff was placed under arrest for violating his parole conditions (Penal Code § 3056/3067) and Penal Code § 148 (resisting and delaying an officer). (Compl. ¶ 16; *see*

United States District Court
Northern District of California

2

1    *also* Flores Decl. ¶ 20; Lathrop Decl. ¶ 18.)

2        At the police station, Plaintiff told the police that there was a gun at the Acton Street house

3    that was his. (Compl. ¶ 17.)  The officers found the gun, which turned out to be stolen, and crack

4    cocaine in the bedroom from which Plaintiff emerged when the officers first contacted him.

5    (Flores Decl. ¶¶ 21, 23; Lathrop Decl. ¶¶ 19, 21.)  Additional crack cocaine was later found in

6    Plaintiff's jacket pocket, which he had also left in the house. (Flores Decl. ¶ 23; Lathrop Decl. ¶

7    21.)

8        This incident resulted in federal criminal charges being filed. *United States v. Conerly,* 13-

9    cr-00717-JST.  The evidence was later suppressed by the district court on the grounds that the

10   officers did not have probable cause to arrest Conerly upon entry into the Acton house. *United*

11   *States v. Conerly,* 13-cr-00717-JST (N.D. Cal. Dec. 8, 2014), ECF No. 97 at 13.  The district court

12   noted that the Government did not provide sufficient evidence to support their contention that the

13   house was in a high crime area. *Id.* The charges were ultimately dismissed.

14       On September 15, 2016, Defendants filed a motion for summary judgment. (Defs.' Mot.,

15   Dkt. No. 29.) On September 29, 2016, Plaintiff filed an opposition and a request for judicial

16   notice. (Pl.'s Opp'n, Dkt. No. 36; Pl.'s Req. for Judicial Not., "Pl.'s RJN," Dkt. No. 37.)  On

17   October 6, 2016, Defendants filed a reply. (Defs.' Reply, Dkt. No. 40.)

18                              **II.    LEGAL STANDARD**

19       **A.    Motion for Summary Judgment**

20       A party may move for summary judgment on a "claim or defense" or "part of... a claim or

21   defense." Fed. R. Civ. P. 56(a).  Summary judgment is appropriate when, after adequate

22   discovery, there is no genuine issue as to material facts and the moving party is entitled to

23   judgment as a matter of law. *Id.*; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

24   Material facts are those that might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.,*

25   477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if there is sufficient

26   evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

27       A party seeking summary judgment bears the initial burden of informing the court of the

28   basis for its motion, and of identifying those portions of the pleadings and discovery responses

United States District Court
Northern District of California

3

that demonstrate the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323. Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Southern Calif. Gas. Co. v. City of Santa Ana,* 336 F.3d 885, 888 (9th Cir. 2003).

On an issue where the nonmoving party will bear the burden of proof at trial, it may discharge its burden of production by either (1) by "produc[ing] evidence negating an essential element of the nonmoving party's case" or (2) after suitable discovery "show[ing] that the nonmoving party does not have enough evidence of an essential element of its claim or defense to discharge its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd., v. Fritz Cos., Inc.*, 210 F.3d 1099, 1103 (9th Cir. 2000); *see also Celotex*, 477 U.S. 324-25.

Once the moving party meets its initial burden, the opposing party must then set forth specific facts showing that there is some genuine issue for trial in order to defeat the motion. *See* Fed. R. Civ. P. 56(e); *Anderson,* 477 U.S. at 250. "A party opposing summary judgment may not simply question the credibility of the movant to foreclose summary judgment. *Anderson,* 477 U.S. at 254. "Instead, the non-moving party must go beyond the pleadings and by its own evidence set forth specific facts showing that there is a genuine issue for trial." *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001) (citations and quotations omitted). The non-moving party must produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." *Bhan v. NMS Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991). Conclusory or speculative testimony in affidavits and moving papers is insufficient to raise a genuine issue of material fact to defeat summary judgment. *Thornhill Publ'g Co., Inc. v. Gen. Tel. & Electronics Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

In deciding a motion for summary judgment, a court must view the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor. *Anderson,* 477 U.S. at 255; *Hunt v. City of Los Angeles,* 638 F.3d 703, 709 (9th Cir. 2011).

**B.    Request for Judicial Notice**

A district court may take notice of facts not subject to reasonable dispute that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be

questioned." Fed. R. Evid. 201(b); *United States v. Bernal–Obeso,* 989 F.2d 331, 333 (9th Cir. 1993).  "[A] court may take judicial notice of 'matters of public record.'" *Lee*, 250 F.3d at 689 (citing *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986)).  The court need not accept as true allegations that contradict facts which may be judicially noticed.  *See Mullis v. United States Bankruptcy Ct.*, 828 F.2d 1385, 1388 (9th Cir. 1987).

## III.    DISCUSSION

### A.    Request for Judicial Notice

As a preliminary matter, Plaintiff asks that the Court take judicial notice of three documents in support of his opposition to the motion for summary judgment: A) Photos of the Area surrounding 4035 W. Van Buren, Chicago, Illinois, from Mot. to Suppress, *United States v. Conerly,* 13-cr-00717-JST (N.D. Cal. Sept. 30, 2014), ECF No. 69 at 41-43; B) Photos of the Area surrounding 2748 Acton Street, Berkeley, California, from Mot. to Suppress, *United States v. Conerly,* 13-cr-00717-JST (N.D. Cal. Sept. 30, 2014), ECF No. 69 at 46-51; C) Three screenshots from mapping software from the time period of May 18, 2014 to November 14, 2014, which shows drug offenses, weapons offenses, homicides, and robberies in Berkeley, California, from Supplemental Information Regarding Mot. to Suppress, *United States v. Conerly,* 13-cr-00717-JST (N.D. Cal. Nov. 19, 2014), ECF No. 90 at 13-15. (Pls.' Req. for Judicial Not., "RJN," Dkt. No. 37.)

Defendants object to the request for judicial notice on the grounds that Plaintiff did not file and serve the exhibits with his moving papers. (Defs.' Reply at 5.)  Plaintiff did, however, adequately cite to the documents, and later filed a supplemental declaration in which he attached them, essentially curing this procedural error. (*See* Suppl. Declaration of Stanley Goff, Dkt. No. 43.)

These exhibits were filed in the related criminal case.  Court records are subject to judicial notice, so the Court will take judicial notice of the exhibits, because they are true and correct copies of a court record.  *United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980).

Accordingly, the Court GRANTS Plaintiff's request for judicial notice.

///

**B.     Motion for Summary Judgment**

Plaintiff maintains two causes of action for false arrest and excessive force.  (Compl. ¶¶ 21-28.)

**i.     False Arrest Claim**

Plaintiff's first cause of action is for violation of his Fourth Amendment right to be free from unlawful arrest.  (Compl. ¶¶ 21-26.)

"Under the Fourth Amendment, a warrantless arrest requires probable cause."  *United States v. Lopez,* 482 F.3d 1067, 1072 (9th Cir. 2007) (citing *Michigan v. Summers,* 452 U.S. 692, 700 (1981)).  Probable cause exists "when 'under the totality of circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that [the defendant] had committed a crime.'"  *Lopez,* 482 F.3d at 1072 (quoting *United States v. Smith,* 790 F.2d 789, 792 (9th Cir. 1986)).  While conclusive evidence of guilt is not necessary to satisfy this standard, "[m]ere suspicion, common rumor, or even strong reason to suspect are not enough."  *McKenzie v. Lamb,* 738 F.2d 1005, 1008 (9th Cir. 1984) (citing *Henry v. United States,* 361 U.S. 98, 101 (1959)).  "Probable cause is lacking if the circumstances relied on are susceptible to a variety of credible interpretations not necessarily compatible with nefarious activities."  *Gasho v. United States,* 39 F.3d 1420, 1432 (9th Cir. 1994) (citations omitted).

"Probable cause must be determined at the time the arrest is made.  Facts learned or evidence obtained as a result of a stop or arrest cannot be used to support probable cause unless they were known to the officer at the moment the arrest was made."  *Allen v. City of Portland,* 73 F.3d 232, 236 (9th Cir. 1995) (citation omitted).  "Where the facts or circumstances surrounding an individual's arrest are disputed, the existence of probable cause is a question for the jury."  *Harper v. City of Los Angeles,* 533 F.3d 1010, 1022 (9th Cir. 2008) (citing *McKenzie,* 738 F.2d at 1008).

a.     <u>Whether there was Probable Cause for the Arrest.</u>

Defendants contend that there was probable cause to arrest Plaintiff. (Defs.' Mot. at 5.) California Penal Code section 148 provides that a person "who willfully resists, delays, or obstructs any . . . peace officer . . . in the discharge or attempt to discharge any duty of his or her

United States District Court
Northern District of California

office or employment . . . shall be [guilty of a misdemeanor]." Cal. Penal Code § 148(a)(1). While section 148(a)(1) is "often referred to as a statute prohibiting 'resisting arrest' . . . the statutory prohibition is much broader than merely resisting arrest." *Hooper v. Cty. of San Diego*, 629 F.3d 1127, 1130 (9th Cir. 2011).  The elements of the crime are: "(1) the defendant willfully resisted, delayed, or obstructed a peace officer, (2) when the officer was engaged in the performance of his or her duties, and (3) the defendant knew or reasonably should have known that the other person was a peace officer engaged in the performance of his or her duties." *Yount v. City of Sacramento,* 43 Cal. 4th 885 (2008) (internal quotations and citation omitted).

First, the complaint alleges that "[w]hen the plaintiff saw the police vehicle, he immediately fled onto a block behind 2627 Park Street in Berkeley California. Officer Flores . . . exited the vehicle and said 'stop Police.' The plaintiff did not comply and continued to flee." (Compl. ¶ 9.)[1]  The inference is that Plaintiff heard the command to stop, because he says that he did not comply.  Thus, Plaintiff concedes that he willfully failed to comply with the officer's commands.  Second, there is no dispute that the Defendants were engaged in the performance of their duties.  *See id.*  Third, there is also no dispute that Defendant knew that the officers were engaged in the performance of their duties, because Officer Flores exited the vehicle and told him to stop. *See id.*

In opposition, Plaintiff argues that the deputies did not have probable cause to arrest Plaintiff, because, despite his flight, the officers "had no information that he was engaging in criminal activity or [that he was] on parole, and he had taken no threatening actions to officers or anyone else." (Pl.'s Opp'n at 9.)  Furthermore, Plaintiff argues that Defendants had no justification

---

[1] Plaintiff now attempts to materially alter the allegations in Paragraph 9 through a declaration of counsel, in which Mr. Goff states that, in drafting the paragraph, "it was not [his] intent, nor the plaintiff's wishes to allege[] or infer that the plaintiff heard the officer's order to stop and kept running anyway." (Decl. of Stanley Goff to Clarify Paragraph 9 of the Pl.'s Compl., Dkt. No. 36-2 ¶ 3.)  The Court also notes that Plaintiff's statement of facts in his opposition state that he fled onto a block when he saw the police vehicle, and that he did not comply with Officer Flores's command to stop. (Pl.'s Opp'n at 5.)  Regardless, Plaintiff's attempted clarification is improper, as it directly contradicts the operative complaint, and is, therefore, stricken.  Likewise, Plaintiff's argument that he never refused to comply with the order to stop is also stricken. (*See* Pl.'s Opp'n at 14-16.)

United States District Court
Northern District of California

United States District Court
Northern District of California

1  to perform a *Terry*[2] stop, because he was not in a high crime area. (Pl.'s Opp'n at 12.)

2      Defendants contend that the area near San Pablo Park[3] is a high crime area, such that a

3  *Terry* stop can be properly initiated under *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000)(high

4  crime area among relevant considerations in evaluating whether criminal activity may be afoot).

5  In support thereof, Defendants present a memorandum, dated June 22, 2016, written by Sgt.

6  Patricia Delaluna, which addresses the criminal street gang activity in and around San Pablo Park

7  from the 1990's to February 2013. (Defs.' Mot. at 6; Decl. of Patricia Delaluna, "Delaluna Decl.,"

8  Dkt. No. 33, Ex. A.)  In the one year period between February 22, 2012 and February 22, 2013,

9  there were 32 narcotics violations, 26 assault/batteries, 18 burglaries, 10 robberies, 9 auto thefts, 6

10  weapons violations, 5 thefts (other than burglaries and auto), 4 sexual assaults, and 2 homicides in

11  the San Pablo Park Area. (Decl. of Officer Darrin Rafferty, Dkt. No. 34 ¶ 6.)  The Court notes that

12  this evidence was not available in the criminal matter, when the district court determined that the

13  Government lacked sufficient evidence to show that San Pablo Park was located in a high crime

14  area, as the district court order predated the memorandum, and there is no indication that the

15  evidence contained in Officer Rafferty's declaration was presented in the criminal matter.

16      In an apparent attempt to rebut this evidence, Plaintiff provides three exhibits consisting of

17  pictures of homes in Chicago, Illinois, and Berkeley, California, and what purports to be a map of

18  recent criminal activity near Acton Street. (*See* Suppl. Decl. of Stanley Goff, Dkt. No. 43, Exs. A-

19  C.)  The Court notes that those exhibits were purportedly utilized in Plaintiff's successful motion

20  to suppress, but Plaintiff has not provided any foundation for these documents.  Therefore, absent

21  any explanation beyond the conclusory claim that the Berkeley neighborhood had less crime than

22  the Chicago neighborhood in *Wardlow*, they are of no use, and the Court is not required to

23  decipher and attach meaning to the exhibits that is not otherwise provided.[4]  The Court also notes

24  that the photographs (Exhibits A & B) are not useful, and the crime maps (Exhibit C) are

---

[2] *Terry v. Ohio*, 392 U.S. 1 (1968).
[3] The San Pablo Park Area is defined as the area contained between Derby Street to the north, Ashby Avenue to the south, San Pablo Avenue to the west, and Sacramento Street to the east. (Decl. of Officer Darrin Rafferty, Dkt. No. 34 ¶ 5.)
[4] Plaintiff's self-serving declaration that it is not a high crime area is unavailing, because he possesses no expertise or knowledge about what constitutes a high crime area.

8

1    unintelligible.  For all of these reasons, the Court sustained Defendants' objections to Exhibits A

2    through C.  *See* discussion *infra* Part III.C.  Thus, in the absence of other admissible evidence,

3    Plaintiff has failed to produce any specific evidence to show that the San Pablo Park Area is not a

4    high crime area, and, therefore, he has not met his burden on this issue.  *See Bhan v. NMS Hosps.,*

5    *Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991).

6          Accordingly, Defendants had reasonable suspicion to conduct a *Terry* stop due to

7    Plaintiff's headlong flight in a high crime area.  Therefore, even if Plaintiff was under arrest when

8    he was first handcuffed in the Acton house, rather than detained as Defendants' claim, the officers

9    had probable cause to arrest him for a violation of Penal Code § 148(a)(1) due to his flight after he

10   was ordered to stop.  Whether Plaintiff actually heard the officer's command is irrelevant. The

11   standard is whether the officer reasonably believed that Plaintiff heard his command and refused

12   to comply.

13                    b.  Qualified Immunity

14         Defendants contend that they are entitled to summary judgment based on qualified

15   immunity.  "The doctrine of qualified immunity protects government officials from liability for

16   civil damages insofar as their conduct does not violate clearly established statutory or

17   constitutional rights of which a reasonable person would have known."  *Pearson v. Callahan*, 555

18   U.S. 223, 231 (2009) (internal quotations omitted).  "Thus, qualified immunity is a defense either

19   if the plaintiff fails to make out a violation of a constitutional right or if the alleged violated right

20   was not clearly established at the time of defendant's alleged misconduct."  *Scocca v. Smith*, 912

21   F. Supp. 2d 875, 887 (N.D. Cal. 2012) (internal quotations omitted).

22         Plaintiff argues that Defendants are not entitled to qualified immunity, because there is a

23   dispute of material fact that the area was a "high crime area" under *Illinois v. Wardlow.*  (Pl.'s

24   Opp'n at 20.)  Plaintiff's argument, however, ignores the fact that qualified immunity attaches

25   when the law is unsettled.  Indeed, it is not clearly established that a "high crime area" is required

26   to initiate a *Terry* stop for unprovoked flight, as *Wardlow* provided that headlong flight is the

27   consummate act of evasion "wherever it occurs." *Wardlow*, 528 U.S. at 124.  In *Smith v. United*

28   *States,* the Ninth Circuit found that the defendant's headlong flight in a high crime area, which

United States District Court
Northern District of California

United States District Court
Northern District of California

1    was for no other reason than to evade a police officer, rendered the officer's determination that

2    flight was suggestive of wrongdoing reasonable under the circumstances. *United States v. Smith*,

3    633 F.3d 889, 894 (9th Cir. 2011).  Thus, the law is unsettled as to whether a high crime area is

4    required to render headlong flight sufficient to conduct a *Terry* stop, so Defendants are entitled to

5    qualified immunity.

6         Moreover, Defendants, having worked with the Drug Task Force, reasonably believed that

7    San Pablo Park was a "high crime area," given that street drug dealing, weapons crimes, violent

8    crimes, and criminal street gang activity were common occurrences. (*See* Flores Decl. ¶ 26;

9    Lathrop Decl. ¶ 24.)  Additionally, the fact that Plaintiff attempted to evade police by running

10   "into the block" suggests that criminal activity was afoot, because he was engaging in the

11   consummate act of evasion by trespassing onto someone else's property. (*See* Flores Decl. ¶ 14c.)

12   Thus, even in the absence of a high crime area, the officers are also entitled to qualified immunity

13   on the grounds that it was reasonable to believe that they had sufficient facts to constitute

14   reasonable suspicion to make a *Terry* stop.

15        Accordingly, Defendants' motion for summary judgment is granted as to the false arrest

16   cause of action.

17             ii.    **Excessive Force Claim**

18        "Section 1983 provides a cause of action against any person who, under the color of state

19   law, abridges rights unambiguously created by the Constitution or laws of the United States. . . .

20   [It] is not itself a source of substantive rights, but merely provides a method for vindicating

21   federal rights elsewhere conferred."  *Crowley v. Nevada*, 678 F.3d 730, 734 (9th Cir. 2012)

22   (internal quotations and citations omitted).  Thus, to state a claim under § 1983, a plaintiff must

23   allege two elements:  (1) that a right secured by the Constitution or laws of the United States was

24   violated, and (2) that the alleged violation was committed by a person acting under the color of

25   state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988).

26        Plaintiff alleges that Defendants violated his right to be free from excessive force when

27   "without probable cause to arrest the plaintiff and without the plaintiff posing a threat of harm to

28   the officers or posing a threat of resisting or escape, the defendants pointed weapons at the

1    plaintiff and slammed him onto the ground, causing him to suffer severe injuries to his arms, neck

2    and shoulders as well as severe emotional distress." (Compl. ¶ 27.)  Plaintiff, however, in

3    opposition, only presents evidence that the excessive force used was handcuffing and being

4    thrown to the ground with guns drawn. (Decl. of David Conerly, "Conerly Decl.," Dkt. No. 36-1

5    ¶¶ 5, 13.) He presents no evidence of injury, and, at the hearing, Plaintiff's counsel conceded that

6    the injuries sustained were minor.

7        The Fourth Amendment requires that officers use only such force as is "objectively

8    reasonable" under the totality of the circumstances.  *See Graham v. Connor,* 490 U.S. 386, 396-97

9    (1989).  This "'requires a careful balancing of the nature and quality of the intrusion on the

10   individual's Fourth Amendment interests against the countervailing governmental interests at

11   stake.'"  *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 921 (9th Cir. 2001) (quoting

12   *Graham*, 490 U.S. at 388).  In assessing the nature and quality of the intrusion, courts assess the

13   type and amount of force inflicted.  *Miller v. Clark Cty.*, 340 F.3d 959, 964 (9th Cir. 2003)

14   (citation omitted).  When examining the governmental interests at stake, courts consider "the

15   severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the

16   officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade

17   arrest by flight."  *Graham*, 490 U.S. at 396.  Reasonableness is viewed from the perspective of an

18   officer on the scene, and without the benefit of 20/20 hindsight, as "police officers are often forced

19   to make split-second judgments—in circumstances that are tense, uncertain, and rapidly

20   evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396-97.

21       Defendants argue that they are entitled to summary judgment on Plaintiff's excessive force

22   claim because the use of handcuffs was appropriate to detain Plaintiff, who had fled into the block

23   and fled into the house of a felon on probation for a firearms crime. (Def.'s Mot. at 14.)

24   Defendants contend that they handcuffed Plaintiff solely for officer safety reasons and did not use

25   any force to do so. (Flores Decl. ¶¶ 14-15, 27; Lathrop Decl. ¶¶ 13-14, 25.)  Alternatively, and

26   without elaboration, Defendants contend that they are entitled to qualified immunity on the force

27   claim. (Defs.' Mot. at 14.)

28   ///

United States District Court
Northern District of California

11

1    In opposition, Plaintiff argues that the officers' use of force was excessive. (Pl.'s Opp'n at

2    16; Conerly Decl. ¶¶ 5, 13.)  Specifically, Plaintiff claims that the officers pointed their weapons

3    at him, threw him to the ground, and handcuffed him, even though he was not resisting arrest nor

4    trying to escape. (Pl.'s Opp'n at 17; Conerly Decl. ¶¶ 5, 13-14.)

5    In the reply, Defendants elaborated on their argument that the force was not excessive,

6    under the facts of the case, due to the danger the officers were facing in the house of a felon on

7    probation for a firearms crime, the nervousness of Mr. Custer, and Plaintiff's earlier unprovoked

8    flight "into the block" and then into the house. (Defs.' Reply at 7.)  At the hearing, Defendants

9    argued that, at a minimum, the handcuffing itself was not excessive force under the circumstance.

10   The Court agrees that the handcuffing was reasonable given that summary judgment was granted

11   as to the false arrest claim, because, at a minimum, the officers are entitled to qualified immunity.

12   Defendants also argued that neither the complaint nor Plaintiff's declaration specified that

13   it was Defendants, rather than the other officers on the scene, that used the allegedly excessive

14   force.  In viewing the evidence in the light most favorable to the nonmoving party and drawing all

15   justifiable inferences in his favor, the Court can reasonably infer that Plaintiff's declaration

16   referred to Defendants, as they are the only two named defendants. (*See* Conerly Decl. ¶ 13.)

17   Thus, there remains a dispute of material fact regarding whether force was used to

18   effectuate the arrest.  Whether force was used and whether that force was excessive implicates the

19   credibility of Plaintiff and Defendants, and, therefore, must be resolved by a jury.  Accordingly,

20   summary judgment is denied as to the allegations that Plaintiff being thrown to the ground and

21   having guns drawn on him constituted excessive force.  Summary judgment, however, is granted

22   as to the allegation that handcuffing was excessive force.

23   **C.    Defendant's Objections to Plaintiff's Evidence**

24   Lastly, Defendants object to Exhibits A through C in the Request for Judicial Notice[5] on

25   the grounds that they lack foundation, are not properly authenticated, and that the fact that the

26   Chicago neighborhood is one of the most violent in the country does not mean that the San Pablo

27

28   [5] The exhibits were erroneously filed with the Supplemental Declaration of Stanley Goff (Dkt. No. 43), rather than with the Request for Judicial Notice.

United States District Court
Northern District of California

Park Area is not a high crime area. (Defs.' Reply at 6.) These objections are well taken. Exhibits A and B are photographs of neighborhoods in Chicago and Berkeley, and Plaintiff fails to provide any information regarding the foundation and authenticity of the photographs. Exhibit C are crime maps, which are virtually unintelligible, but, based on the address line in the search boxes appear to show the number of certain crimes that occurred in Berkeley in a six month period. Again, Plaintiff does not provide any foundation nor does he attempt to explain the significance of the exhibits beyond his conclusory statements that the Berkeley neighborhood was not a high crime area. Thus, Defendants' objections are sustained.

## IV.    CONCLUSION

For the reasons set forth above, Defendants' motion for summary judgment is GRANTED IN PART AND DENIED IN PART. Specifically, the motion is granted as to the false arrest claim, and denied as to the excessive force claim.

Plaintiff's request for judicial notice is GRANTED.

IT IS SO ORDERED.

Dated: November 23, 2016

KANDIS A. WESTMORE
United States Magistrate Judge